1
2
3
4
5            UNITED STATES DISTRICT COURT

6            EASTERN DISTRICT OF WASHINGTON

7
8    TODD M. CHISM and NICOLE          )
     C. CHISM, individually and as     )    No. CV-09-25-LRS
     husband and wife,                 )
9                                      )
                  Plaintiffs,          )    **ORDER RE**
10                                     )    **SUMMARY JUDGMENT**
                                       )    **MOTIONS,** ***INTER ALIA***
11         vs.                         )
                                       )
12                                     )
     STATE OF WASHINGTON, by and       )
13   through the WASHINGTON STATE      )
     PATROL; RACHEL E. GARDNER,        )
14   individually; and JOHN SAGER,     )
     individually,                     )
15                                     )
                  Defendants.          )
16   _____ )

17
        **BEFORE THE COURT** are Plaintiffs' Motion For Summary Judgment
18
     Re: Affirmative Defense No. 4 (Ct. Rec. 11), Defendants Gardner's and Sager's
19
     Motion For Summary Judgment (Ct. Rec. 32), and Defendants Gardner's and
20
     Sager's Motion To Strike The Reports Of Marcus Lawson (Ct. Rec. 52).  The
21
     summary judgment motions were orally argued on November 10, 2009.  Robert A.
22
     Dunn, Esq., argued for Plaintiffs.  Carl P. Warring argued for Defendants Gardner
23
     and Sager.
24
        At the oral argument, the court gave the Plaintiffs leave to file a
25
     memorandum explaining the significance of deposition excerpts appended to the
26

27   **ORDER RE SUMMARY**
28   **JUDGMENT MOTIONS,** ***INTER ALIA***-  1

Second Supplemental Declaration of Susan C. Nelson, and Defendants leave to file a memorandum in response thereto. (Ct. Rec. 82). Plaintiffs chose to file a Supplemental Statement Of Material Facts (Ct. Rec. 83), and Defendants responded with a Second Supplemental Statement Of Material Facts (Ct. Rec. 84). Plaintiffs have filed an objection to Defendants' Second Supplemental Statement Of Material Facts, asserting it is impermissible narrative and asking that it be stricken or that Plaintiffs be given an opportunity to respond thereto. In its order (Ct. Rec. 82), this court did not specify that statements of material fact had to be filed. The court specified that memoranda would be appropriate. In any event, the court is capable of discerning what is argument and what is fact, and the extent to which an argument is supported by facts found in the record. Accordingly, Plaintiffs' objection is **OVERRULED**.

## I. BACKGROUND

This case was removed from Spokane County Superior Court on the basis of the 42 U.S.C. Section 1983 and 1985 claims asserted against the Defendants. These claims allege Defendants violated Plaintiffs' Fourth and Fourteenth Amendment rights by searching the Plaintiffs' home without probable cause, and arresting Plaintiff Todd M. Chism without probable cause.[1] There are also pendent state law claims asserted against the Defendants alleging intentional torts and negligence. Plaintiffs Todd M. Chism and Nicole C. Chism, husband and wife, seek an award of compensatory damages, as well as punitive damages under 42 U.S.C. Section 1983.

---

[1] Section 1985 pertains to conspiracies to violate civil rights under Section 1983.

**ORDER RE SUMMARY**
**JUDGMENT MOTIONS,** *INTER ALIA-* **2**

Defendants Rachel E. Gardner and John Sager contend they are entitled to qualified immunity with regard to the 42 U.S.C. Section 1983 and 1985 claims. Plaintiffs seek summary judgment on Gardner's and Sager's qualified immunity affirmative defense alleged in their Answer to Plaintiffs' complaint. Defendants seek summary judgment on Plaintiffs' Section 1983 and 1985 claims on the basis of qualified immunity.[2]

## II. FACTS

Defendant Rachel Gardner is employed by the Washington State Patrol (WSP) as a detective in the Missing and Exploited Children Task Force (MECTF). At the time of the investigation in question, Defendant John Sager was the sergeant overseeing the MECTF and was Gardner's direct supervisor.

On July 3, 2007, MECTF received a CyberTipline Report from the National Center for Missing and Exploited Children (NCMEC). This tip indicated that on June 23, 2007, Yahoo! archived the material on a website hosted by Yahoo!, identified as http://foelonipwincmezixecvom.us/, because it contained images of child pornography. The tip identified qek9pj8z9ec@yahoo.com as the Yahoo! user account associated with the website (also referred to herein as the "qek" account). The first tip also indicated the IP (Internet Protocol) address

---

[2] The other named Defendants are the State of Washington and the Washington State Patrol. These state entities are not subject to suit under 42 U.S.C. Section 1983 and 1985 in either federal or state court because they are not "persons" for the purpose of Section 1983 damages actions. *Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304 (1989)

**ORDER RE SUMMARY**
**JUDGMENT MOTIONS, *INTER ALIA*- 3**

68.113.11.49 was used to open the qek9pj8z9ec@yahoo.com Yahoo! user account on May 11, 2007. This was the registration IP address used to open the account, not an IP address that was used to log in to the account. The IP address (68.113.11.49) was owned by Charter Communications. The tip did not provide the time and date that the pornographic images were uploaded.

On July 17, 2007, MECTF received another CyberTipline report from NCMEC. This tip indicated that on July 3, 2007, Yahoo! archived the material on a website hosted by Yahoo!, identified as http://qemtudawyownufiseip.com , because it contained images of child pornography. The tip identified qaagwcyI9ab@yahoo.com as the Yahoo! user account associated with the website (also referred to herein as the "qaag" account). The tip indicated that the IP address 67.160.71.115 was used to open this user account on June 19, 2007. This was the registration IP address used to open the account, not an IP address that was used to log in to the account. The IP address (67.160.71.115) was owned by the Comcast Corporation. The specific date and time of the upload of child pornography was not provided.

The MECTF obtained search warrants from Thurston County Superior Court for the Yahoo! records related to the respective tips. In response to the warrants, Yahoo! provided, with regard to each tip, a Yahoo! Account Management Tool printout, a Yahoo! Login Tracker printout, a Subscriber Information printout, a Billing History printout, and a Small Business Support Tool printout.

With regard to the July 3, 2007 tip, the Account Management Tool printout listed the name of "Mr. Nicole Chism" of Chile, a male, with a birth date of May 20, 1966, as the individual associated with the qek9pj8z9ec Yahoo! user account. The Login Tracker printout showed that this user name logged in on June 18, 2007

**ORDER RE SUMMARY**
**JUDGMENT MOTIONS, *INTER ALIA*- 4**

through an IP address identified as 69.147.83.181.  The Subscriber Information printout identified Nicole Chism as the individual associated with this user account,  and set forth the Chisms' correct residential address in Nine Mile Falls, WA (5835 Walnut Springs Way), as well as their residential phone number.  It also set forth their credit card number ending with the last four digits of "6907." The Billing History printouts, along with the Small Business Support Tool printout, demonstrated the  http://foelonipwincmezixecvom.us/ website had been created on May 11, 2007, and that two months of service for the website had been paid with the Chisms' credit card.

With regard to the July 17, 2007 tip, the Account Management Tool printout listed the name of "Mr. Nicole Chism" of Bolivia, a male, with a birth date of March 11, 1977, as the individual associated with the qaagwcy19ab Yahoo! user account.  The Yahoo! Login Tracker printout showed that the user name, qaagwcy19ab, had logged in to the http://qemtudawyownufiseip.com  website on three occasions (June 19 and twice on July 3, 2007).  On one of those occasions on July 3, 2007, the IP address of 69.147.83.181 was used, that being the same IP address used by qek9pj8z9ec to log in to the http://foelonipwincmezixecvom.us/ website on June 18, 2007.  The Small Business Support Tool printout demonstrated that the http://qemtudawyownufiseip.com  website had been created on June 19, 2007 by qaagwcy19ab.

The MECTF then obtained warrants from Thurston County Superior Court to obtain records from Charter Communications and Comcast Corporation for information about the registration IP addresses 68.113.11.49 and 67.160.71.115.  Charter Communications indicated the subscriber information associated with the 68.113.11.49 IP address was Cheryl Corn, 2700 S. Wilbur Ave., Walla Walla, Washington, 99362.  Charter indicated the service was established in September

**ORDER RE SUMMARY
JUDGMENT MOTIONS,** *INTER ALIA*-  5

2003, and had continued through the time of Charter's responding to the warrant. Comcast indicated the subscriber information associated with the 67.160.71.115 IP address on June 19, 2007 was Vitina Pleasant, 28624 25th Place South, Federal Way, WA 98003. Comcast indicated that Ms. Pleasant's assignment was a dynamic assignment and as of August 17, 2007, it had changed to 67.171.47.82.

Gardner was advised by Detective Dave Startup of the WSP Identity Theft Unit that the 6907 credit card associated with the qek9pj8z9ec Yahoo! user account and the http://foelonipwincmezixecvom.us/ website was issued by Bank of America. Gardner contacted Bank of America by telephone and spoke to a person named Jessica who advised her the Chisms' credit card account had been closed in June of 2006 after the Chisms reported a lost card, and that a new card was issued thereafter to replace the lost card.[3]  This new card bore the number ending with the last four digits of 6907. Gardner says she was advised by Jessica that there was nothing about fraud relating to the 6907 card or to the Chism's

---

[3]  Startup sent an e-mail to Shari Gardner at Bank of America on September 25, 2007, inquiring about criminal activity and "red flag" purchases with regard to card number 6907, and also the possibility the card had been reported as stolen. Gardner responded with an e-mail on September 27, 2007, stating she was busy because "fraud never sleeps" and advising Startup to call "Credit Card Investigations" at 1-800-616-3245. (Ex. I to Ct. Rec. 27).   This is the number that Gardner called when she spoke with Jessica on September 27, 2007. (Ex. J at Ct. Rec. 27).

**ORDER RE SUMMARY JUDGMENT MOTIONS, *INTER ALIA*-  6**

credit card account in general.

Gardner was advised to fax a letter on official WSP letterhead to Bank of America to obtain the credit card statements pertaining to the Plaintiffs' credit card account. Subsequently, in a letter dated September 27, 2007, and faxed to "Credit Card Investigations" at Bank of America, WSP requested all information related to credit card usage for the months of May and June 2007 concerning the card bearing the number ending with the last four digits of 6907. (Ex. K to Ct. Rec. 27). On September 28, 2007, Mark Youssi, a Senior Fraud Investigator with Bank of America, faxed the information to WSP which included not only the May and June 2007 statements, but also the April and July 2007 statements. (Ex. L at Ct. Rec. 28). The credit card statements confirmed that Todd Chism was the primary holder on the account as only his name appeared on the statements. The credit card statements revealed the Chisms had used several different credit cards, in addition to the card bearing the last four digits of 6907. One card bore the last four digits of 2191, and another card bore the last four digits of 9626, in addition to the card bearing the last four digits of 6907. Detective Gardner subsequently learned, following the search of the Chism home in January 2008, that card number 6907 had transitioned to card number 2191 because of a bank merger, and that thereafter, card number 2191 had transitioned to card number 9626 in July 2007.[4] The statements showed that card number 6907 had been used to purchase downloads from the http://foelonipwincmezixecvom.us/ website on May 14 and

---

[4] All of the charges on the April 2007 statement are to the 6907 card. The May and June 2007 statements show charges to the 6907 card and to the 2191 card. The July 2007 statement shows charges to the 2191 card and the 9626 card.

**ORDER RE SUMMARY JUDGMENT MOTIONS, *INTER ALIA*- 7**

June 11, 2007, and had been used to purchase a download from the
http://qemtudawyownufiseip.com website on June 22, 2007.

On January 24, 2008, Gardner submitted a search warrant affidavit to the
Thurston County Superior Court.  The affidavit identified two premises to be
searched: the Chisms' home in Nine Mile Falls located in Stevens County, and
Todd Chism's work place in Spokane.  The affidavit recounted the results of the
investigation, as set forth above.  Judge Anne Hirsch issued a search warrant based
on the affidavit.

On the same date, January 24, 2008, a deputy prosecuting attorney in
Thurston County filed an Information and Certification of Probable Cause seeking
an arrest warrant for Todd Chism.  The Certification of Probable Cause
summarized the information provided by Detective Gardner's investigation, but
did not specifically mention Detective Gardner's search warrant affidavit.  Judge
Hirsch determined there was probable cause to arrest Chism for possession of
child pornography and for bringing images of the same into the State of
Washington.  She issued a warrant for the arrest of Chism.

The search and arrest warrants were executed on January 29, 2008.  No
child pornography was discovered during the search of the Chism residence.  No
child pornography was found on the computers accessed by the Chisms.  The
criminal charges against Todd Chism were dismissed in April 2008.

## III.  DISCUSSION

### A.  Qualified Immunity and Summary Judgment

The doctrine of qualified immunity protects government officials "from
liability for civil damages insofar as their conduct does not violate clearly
established statutory or constitutional rights of which a reasonable person would

**ORDER RE SUMMARY
JUDGMENT MOTIONS, *INTER ALIA*- 8**

have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). Qualified immunity balances two important interests:  the need to hold public officials accountable when they exercise power irresponsibly, and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Pearson v. Callahan*, _____ U.S. _____ , 129 S.Ct. 808, 815 (2009).  The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id*., quoting *Groh v. Ramirez*, 540 U.S. 551, 567, 124 S.Ct. 1284 (2004).  Unless a government agent's act is so obviously wrong, in light of the pre-existing law, that only a plainly incompetent officer or one who knowingly violated the law would have done such a thing, the agent has immunity from suit. *Malley v. Briggs*, 475 U.S. 335, 341-43, 106 S.Ct. 1092 (1986).

In *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001), the Supreme Court mandated a two-step sequence for resolving qualified immunity claims. First, the court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right.  Second, the court must decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct.  Even assuming the existence of a constitutional violation, an officer is entitled to qualified immunity if the constitutional right was not clearly established at the time of the alleged violation. The Supreme Court's recent decision in *Pearson*  modified the *Saucier* analytical framework so that the decisional sequence required by *Saucier* is no longer mandatory.  A court is "permitted to exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 129 S.Ct. at 818.  When

**ORDER RE SUMMARY**
**JUDGMENT MOTIONS,** *INTER ALIA-*  **9**

determining whether a constitutional right was clearly established, a court must look to the "specific context of the case," and not just "broad general propositions." *Saucier*, 533 U.S. at 201.

Although material facts are often disputed in cases where qualified immunity is asserted, summary judgment is possible if, interpreting the facts in the light most favorable to plaintiff, the court determines these facts do not state a violation of clearly established law. *Anderson v. Creighton*, 483 U.S. 635, 646 n.6, 107 S.Ct. 3034 (1987). In determining whether Defendants' motion for summary judgment should be granted, the court is to interpret the facts in the light most favorable to the Plaintiffs, although as Defendants note, this rule does not hold true in determining whether Plaintiffs' cross-motion should be granted. This is because the Plaintiffs seek a complete dismissal of the qualified immunity defense without any possibility of its reassertion at a later date, whereas even if Defendants' motion for summary judgment were denied because of the existence of material facts, the issue of qualified immunity would still need to be determined once a trier of fact has decided the issues of material fact. When qualified immunity cannot be decided on a motion for summary judgment because facts relevant to qualified immunity are in dispute, the court may submit the factual issues that are material to the jury by special verdicts, while reserving to itself determination of the immunity defense in light of the jury's responses to the special verdicts. *Tortu v. Las Vegas Metropolitan Police Dept.*, 556 F.3d 1075 (9th Cir. 2009). Where a genuine material dispute as to the facts and circumstances within an officer's knowledge or what the officer and claimant did or failed to do is raised, summary judgment should not be granted. *Peng v. Penghu*, 335 F.3d 970, 979-80 (9th Cir. 2003).

**ORDER RE SUMMARY JUDGMENT MOTIONS, *INTER ALIA*- 10**

**B.  Application Of Qualified Immunity To Fourth Amendment Claims**

The qualified immunity "objective reasonableness" defense applies even to Fourth Amendment challenges to arrests and searches where the constitutional standard itself is objective reasonableness.  There are two standards of reasonableness such that conduct which is unreasonable under the Fourth Amendment can still be considered objectively reasonable for the purpose of qualified immunity.  *Malley*, 475 U.S. at 344-45.  A police officer may "reasonably, but mistakenly, conclude that probable cause is present." *Anderson*, 483 U.S. at 640.  If the law is not sufficiently clear that a reasonable official would understand that what he did violated a constitutional right, he is entitled to qualified immunity from damages.  Conversely, if the law is sufficiently clear that he would understand that what he did violated a constitutional right, he is not entitled to qualified immunity.

The officer has two layers of protection with regard to Fourth Amendment claims, one under the amendment itself, and one under qualified immunity.  The qualified immunity question becomes whether the officer had arguable probable cause, or whether the officer reasonably believed he had probable cause, or whether a reasonable officer could have mistakenly concluded there was probable cause. *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534 (1991).  Qualified immunity in the civil case context is the mirror image of the good faith exception in the criminal context which will preclude suppression of evidence even if there was insufficient probable cause. *U.S. v. Leon*, 468 U.S. 987, 104 S.Ct. 3405 (1984).

**C.  Probable Cause**

**ORDER RE SUMMARY JUDGMENT MOTIONS,** *INTER ALIA*-  11

**1. Search Warrant**

A state court of record may issue a search warrant authorizing the search of a premises upon a showing that probable cause exists to believe that contraband or evidence will be found.  The test applied is whether, using common sense and considering the totality of the circumstances, the judge can reasonably conclude there is a "fair probability" that contraband or evidence of a crime will be found in the place to be searched.  *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317 (1983).   Probable cause means "fair probability," not certainty or even a preponderance of the evidence.  *Id*. at 246.  A judge is only required to answer the "commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place" before issuing a search warrant.  *Id*. at 230.

In *United States v. Gourde*, 440 F.3d 1065 (9th Cir. 2006), the defendant conditionally pled guilty to possession of child pornography, preserving for appeal the issue of whether probable cause supported issuance of a warrant to enter his home, seize his computer, and search it.  Defendant contended the affidavit in support of the search warrant lacked sufficient indicia of probable cause because it contained no evidence that defendant actually downloaded or possessed child pornography.  In an *en banc* decision, the Ninth Circuit disagreed:

> Gourde seeks to sidestep the "fair probability" standard and elevate probable cause to a test of near certainty. In the face of the clear teaching of *Gates*, Gourde argues that probable cause was lacking because the government could have determined with certainty whether he had actually downloaded illegal images.  According to Gourde, the FBI could have found any records of his downloads from Lolitagurls.com from the owner's computer [owner of that website], which the FBI seized before conducting the search of Gourde's residence.  Gourde posits that absent such concrete evidence, the profile data and other facts are insufficient to support a warrant.

**ORDER RE SUMMARY JUDGMENT MOTIONS,** *INTER ALIA*- **12**

> Whether the FBI could or would have found such data on the owner's computer is not clear from the record, nor is this inquiry the one demanded by precedent.
>
> . . .
>
> The Supreme Court requires neither a prima facie showing nor an affidavit containing facts that make it "more likely true than false" that Gourde possessed child pornography.

*Id*. at 1072-73.

The Ninth Circuit noted the benchmark was not what the FBI "**could have done**." *Id*. at 1073 n. 5 (emphasis added). The circuit observed that an affidavit may support probable cause even if the government fails to obtain potentially dispositive information. *Id*., citing *United States v. Miller*, 753 F.2d 1475, 1481 (9th Cir. 1985)(holding that an affidavit supported probable cause even though "[i]ndependent verification could have been easily accomplished" and "the officers failed to take these simple steps").

Gourde argued that reversal of the district court's order denying his motion to suppress was dictated by *United States v. Weber*, 923 F.2d 1338 (9th Cir. 1991), a case the Plaintiffs here (the Chisms) rely upon heavily in arguing there was insufficient probable cause to support issuance of the search and arrest warrants. According to the Ninth Circuit in *Gourde*, "*Weber* illustrates why the Supreme Court has emphasized that 'probable cause is a fluid concept- turning on the assessment of probabilities in particular factual contexts- not readily, or even usefully reduced to a neat set of legal rules." *Gourde*, 440 F.3d at 1073, quoting *Gates*, 462 U.S. at 232. The Ninth Circuit went on to distinguish *Weber*, noting that case "did not even involve the Internet" and therefore, was "hardly comparable to Gourde's situation." *Id*. According to the *Gourde* court: "*Weber* cannot be read to support Gourde's position- that a search warrant for child pornography may issue only if the government provides concrete evidence,

**ORDER RE SUMMARY JUDGMENT MOTIONS,** *INTER ALIA*- **13**

without relying on any inferences, that a suspect *actually* receives or possesses images of child pornography- without running afoul of *Gates*." *Id*. at 1074 (emphasis in text).

The *Gourde* court found that a "triad of solid facts" allowed the magistrate judge in that case to reasonably infer there was a "fair probability" Gourde had received or downloaded images of child pornography.  These facts were as follows: 1) the Lolitagurls.com website contained illegal images of child pornography; 2) Gourde intended to have and wanted access to these images; and 3) "the images were almost certainly retrievable from his computer if he had ever received or downloaded them." *Id*. at 1071.  The evidence was unequivocal that Lolitagurls.com was a child pornography site whose primary content was in the form of images. *Id*. at 1070.  Secondly, there was no question that Gourde had subscribed to Lolitagurls.com for over two months.  "With evidence from Lancelot Security, the FBI linked the email user-"gilbert_95@yahoo.com," a known subscriber to Lolitagurls.com- to Gourde and to his home address in Castle Rock, Washington." *Id*. at 1070-71.[5]  Finally, with Gourde having paid for multi-month access to a child pornography site, it was a "near certainty that his computer would contain evidence of a crime had he received or downloaded images . . . ." *Id*. at 1071.  Because of the long memory of computers, any evidence of a crime was almost certainly still on his computer, and even had he tried to delete the images,

---

[5] Lancelot's records listed Gourde as a subscriber/member to Lolitagurls.com and provided his home address, date of birth, email address, and the fact that he had been a subscriber from November 2001 to January 2002.  440 F.3d at 1067-68.

**ORDER RE SUMMARY JUDGMENT MOTIONS, *INTER ALIA*-  14**

the computer would still contain at least the digital footprint of the images, per the recitation of the FBI experts in the affidavit in support of the search warrant. *Id*.

In *United States v. Kelley*, 482 F.3d 1047 (9th Cir. 2007), the district court found probable cause was not established by proof of defendant's receipt of e-mails, absent direct evidence about those who sent them; proof of defendant's connection with the persons who owned other computers in which e-mails to his screen name appeared; or proof of defendant having reached out in some way for the pornography attached to the transmissions. Citing *Gourde*, the Ninth Circuit reversed, finding there was a reasonable inference from the facts set out in the affidavit in support of the search warrant that defendant was not an accidental recipient of e-mails with attachments containing illicit child pornography, and therefore it was fairly probable that the same would be found on his computer. According to the panel:

> The affidavit does not fall short of probable cause solely because it contained no concrete evidence that Kelley actually solicited the nine e-mails he received. Rather, reasonable inferences from the facts averred can, and in this case do, supply the missing links. The reasonable inference here is that Kelley would not have received so many e-mails on different occasions, addressed to different screen names, containing attachments that depict the same genre of child pornography, that were also on computers of other collectors of the same genre of child pornography, unless he wanted to receive them.

482 F.3d at 1055.

### a. Illegal Images On Web Site

Plaintiffs do not dispute that Detective Gardner found illicit images of child pornography on the http://foelonipwincmezixecvom.us/ website. In her affidavit in support of the search warrant, Gardner noted that of the 200 images downloaded from that site, the NCMEC CyberTipline report indicated that approximately 14 of

**ORDER RE SUMMARY**
**JUDGMENT MOTIONS, *INTER ALIA*- 15**

the images appeared to contain minors engaged in sexually explicit conduct.
Gardner says she "viewed the images contained in the CyberTip and determined
each of the fourteen files contain images of minors engaged in sexually explicit
conduct" and that "NCMEC also confirmed five of these images as known child
pornography and four involved cases where the child has been identified."
Gardner described in detail at least two of the fourteen images she reviewed.
(Search Warrant Affidavit at pp. 6-7, Ex. M to Ct. Rec. 27).  Significantly,
Gardner also noted that NCMEC had conducted a historical search of their
CyberTipline reports on both the internet site, http://foelonipwincmezixecvom.us/,
and the Yahoo! Flickr account, qek9pj8z9ec@yahoo.com, and had discovered
nine past CyberTipline reports with regard to both.  (Search Warrant Affidavit at
p. 6).

    With regard to the other website -  http://qemtudawyownufiseip.com  -
Gardner's affidavit notes that it was Detective Victoria Mauro who received the
NCMEC CyberTipline report "containing over 200 images downloaded" to
qaagwcyI9ab@yahoo.com.  (Search Warrant Affidavit at p. 7).  Detective
Gardner's affidavit does not specifically discuss those images and whether they
contained any child pornography, but that is not fatal to either the existence of
probable cause or alternatively, the existence of qualified immunity, considering
Gardner's recitation with regard to the other website site
(http://foelonipwincmezixecvom.us/) and user account
(qek9pj8z9ec@yahoo.com).

### b.  Intent To Have And Want Access To Images

    What the Plaintiffs do dispute is whether Gardner's search warrant affidavit
indicates with enough sufficiency that it was the Chisms, and specifically Todd

**ORDER RE SUMMARY**
**JUDGMENT MOTIONS, *INTER ALIA*- 16**

Chism, who intended to have and wanted access to the images of child pornography.  Plaintiffs note that the information provided by Yahoo! with regard to the "qek" account, specifically the Account Management Tool printout, listed the wrong country (Chile), the wrong date of birth (May 20, 1966), and a "fictitious" zip code ("ucc16") and time zone (GMT).[6]  It is also true, however, that the Subscriber Information provided was "Nicole Chism" with a "billing" address in Nine Mile Falls, Washington ("5835 Walnut Springs Way") nearly identical to the Chisms' true residential address ("5835 Walnut Springs Ln" as listed on their credit card statements), a proper zip code (99026), and a "billing" phone number beginning with the correct area code (509).[7]  While there was no Subscriber Information printout provided with regard to the "qaag" account, the Account Management Tool printout with regard to that account listed the name of "Mr. Nicole Chism," just as the Account Management Tool printout with regard to the "qek" account.  Plaintiffs note that the Account Management Tool printout with regard to the "qaag" account, like the Account Management Tool printout with regard to the "qek" account, listed the wrong county (Bolivia), the wrong date of birth (March 11, 1977), and a "fictitious" zip code ("nf897").

_____

[6]  Although Plaintiffs claim this is a "fictitious"time zone, "GMT" would seem a reference to Greenwich Mean Time, a legitimate time zone, but obviously not the time zone in which the Chisms reside.

[7]  There is no indication in the record or assertion by the Plaintiffs that this phone number (509-468-8669) was different from their actual residential phone number.

**ORDER RE SUMMARY**
**JUDGMENT MOTIONS, *INTER ALIA*-  17**

1    While there was some erroneous information contained in the Yahoo!

2  records about the "qek" and "qaag" accounts, there was still enough information

3  from which a reasonable inference could arguably be drawn that the Chisms were

4  associated with the accounts.  Accordingly, it did not matter that in her search

5  warrant affidavit, Detective Gardner did not mention that the Yahoo! Account

6  Management Tool printouts identified the countries of origin as Chile and Bolivia

7  with fictitious zip codes.  In her search warrant affidavit, Detective Gardner noted

8  that in one Account Management Tool printout "[t]he name listed is Mr Nicole

9  Chism, the gender is male, and the birthday is listed as March 11, 1977," and that

10  in the other Account Management Tool printout "[t]he name listed is Mr Nicole

11  Chism, the gender is male, and the birthday is listed is May 20, 1966." (Search

12  Warrant Affidavit at p. 7).  It would have been obvious that "Nicole" is not a male

13  name and therefore, the reviewing judge would have considered that in

14  determining whether the totality of the circumstances gave rise to probable cause

15  for issuance of a search warrant.  Plaintiffs seem to suggest that had Gardner done

16  additional investigation, she would have found the birth dates were fictitious.

17  Even had such information been included in the affidavit, it would not have

18  necessarily led the judge to conclude there was not probable cause.  It would also

19  have been apparent to the judge that the birth dates for "Mr. Nicole Chism" on the

20  two different user accounts were inconsistent (March 11, 1977 and May 20, 1966),

21  and therefore likely fictitious.

22    Plaintiffs contend *Gourde* is distinguishable and that a "direct nexus" was

23  established in that case because the FBI linked the email user-

24  "gilbert_95@yahoo.com," a known subscriber to Lolitagurls.com - to Gourde and

25  to his home address in Castle Rock, Washington.   440 F.3d  at 1070-71.  Plaintiffs

26  claim that because of this, it was clear that Gourde intended to have and wanted

27  **ORDER RE SUMMARY**
28  **JUDGMENT MOTIONS,** *INTER ALIA*-  **18**

access to the images on Lolitagurls.com.  Plaintiffs note that whereas Gourde submitted his correct identity, his correct birth date, his correct physical address, and his correct credit card information to become a member of an illegal website allowing him to thereby access and possess child pornography," the Chisms did not do so.

*Gourde* clearly did not say anything about the need for a "direct nexus," a "physical nexus,"  or for "concrete" evidence, all of which would effectively elevate the "fair probability" standard to a "near certainty" standard. Furthermore, while it was no doubt helpful that the membership information contained a correct name, birth date, physical address and credit card information for Gourde, it was not absolutely essential to the existence of probable cause. What was essential was that Gourde's credit card, like the Chisms' credit card, had been used over a multi-month period to make payments to web sites known to contain child pornography.  Plaintiff's own expert, Marcus Lawson, effectively acknowledges as much because of the possibility of credit card fraud (that the credit card at issue has been stolen and is being used by someone else):

> Typically, if a person's credit card is stolen for fraudulent or illegal use[,] the thief **will need to use the name and address associated with the card** for on-line transactions because the card number will not work if they do not.  Simply having the credit card number is usually not sufficient and the thief will need to use the card holder['‑]s name and address as well . . . .
>
> **It is primarily for this reason that relying only on information provided by the user of a credit card that is associated with criminal activity is inherently unreliable.** Taking for granted that the registration information provided by the user of a credit card number accessing an illegal web site is absolutely true, without associating evidence linking that access to the suspect via IP addressing is, in my opinion, likely to lead to an executed warrant on what is essentially a victim['‑]s residence or business.

(Ex. J to Ct. Rec. 13 at p. 67)(Emphasis added).  In other words, the information

**ORDER RE SUMMARY JUDGMENT MOTIONS, *INTER ALIA*-  19**

provided by Gourde could not necessarily have been taken at face value that he had in fact been the one who subscribed to the Lolitagurls.com web site. Significant also was that Gourde was a subscriber from November 2001 until January 2002, and that he never cancelled his membership and was still a member when the FBI shut down the web site in January 2002. 440 F.3d at 1068. "Gourde became a member and never looked back- his membership ended because the FBI shut down the site." *Id*. at 1070-71. While it can be argued there was a more solid connection in *Gourde* between the defendant (Gourde) and the illegal web site than there was between the Chisms and the illegal web sites here, *Gourde* does not necessarily compel a finding that there was no probable cause in the case at bar, or even more importantly for qualified immunity purposes, that *Gourde* constitutes clearly established law from which a reasonable officer would have concluded she did not have probable cause to seek search and arrest warrants regarding the Chisms.

Plaintiffs note there was no IP (Internet Protocol) address tying either the "qek" or "qaag" user  accounts to the Chisms' physical address, Todd Chism's real estate office or fire station address, or the Chisms' personal computer.  It is true the IP addresses used to register the accounts
(68.113.11.49 and 67.160.71.115) resolved to two different women, one in Walla Walla (Cheryl Corn), and the other in Federal Way (Vitina Pleasant).  These registration IP addresses, however, are distinct from log-in IP addresses, and as Detective Gardner noted in her search warrant affidavit, one of the log-in IP addresses (69.147.83.181) was used to log in to both accounts (on July 3, 2007, it was used by qaagwcy19ab to log in to the http://qemtudawyownufiseip.com  website, and on June 18, 2007, it was used by qek9pj8z9ec to log in to the http://foelonipwincmezixecvom.us/ website).

**ORDER RE SUMMARY JUDGMENT MOTIONS, *INTER ALIA*-  20**

In her search warrant affidavit, Detective Gardner indicated and acknowledged that with regard to the registration IP addresses used to create the accounts, the "initial report" from Yahoo! did not indicate "the exact date and time of the uploads" and "[t]his information is crucial in order to trace back the user of the IP address, and associate it with a specific individual or computer." (Ex. M to Ct. Rec. 28 at pp. 6-7). Thus, that Gardner did not include the fact the registration IP addresses resolved to women located in Walla Walla and Federal Way did not constitute a material omission from the affidavit such that had it been included in the affidavit, the issuing judge would have concluded there was no probable cause to search the Chisms' residence and arrest Todd Chism. According to Gardner in her Declaration (Ct. Rec. 27 at p. 7):

> I explored the Chism lead before other leads for a few reasons. First, the Chism name was the primary commonality between both cases. Second, the IP addresses returned to Ms. Corn and Ms. Pleasant could only be linked with registering the Yahoo! user accounts, not with accessing the child pornography because the exact date and time of the upload of the child pornography was not provided by Yahoo!. Moreover, neither registration IP address appeared again as a log in IP address.

Marcus Lawson, the Plaintiff's expert, would seemingly agree because according to him, "[w]hether the IP address associated with the illegal activity is static or dynamic, it is incumbent upon the investigator to connect the IP address associated with the illegal activity with a specific user and a physical location if a search is planned." (Ex. J to Ct. Rec. 13 at p. 4). The IP address must be connected to a "specific criminal episode" (Ex. J to Ct. Rec. 13 at p. 5).

In her Declaration (Ct. Rec. 27 at p. 6), Detective Gardner indicates none of the log-in IP addresses could be associated with a specific computer or location. Plaintiffs do not contest that assertion. In her search warrant affidavit, Gardner provided a definition of an IP address as "a unique number assigned to each

**ORDER RE SUMMARY JUDGMENT MOTIONS,** *INTER ALIA***-  21**

computer or device attached to the Internet.  Therefore, each computer on the Internet has a unique IP address at the time it is connected."  (Ex. M to Ct. Rec. 28 at p. 4).  IP addresses are either dynamic or static.  Mr. Lawson explains this:

> Static IP addresses, as a general rule, remain the same for periods of time and are commonly associated with such things as cable and DSL connections to the Internet, such as Comcast Cable.  Dynamic IP addresses on the other hand are "dynamic" in that they change, usually every time the computer user accesses the Internet.  Dial-up accounts such as those through America On-Line are an example of this.  The IP number of the computer dialing into the AOL network to access the Internet will vary depending on what Internet server the computer happens to dial into at that given moment.

(Ex. J to Ct. Rec. 13 at p. 4).  In asserting that a suspect's computer needs to be searched before any arrest is made, Lawson says this is because "[e]ven static IP addresses change and certainly, as explained above, dynamic addresses most definitely change."  Therefore, according to Lawson, "any IP address[] relied on to link a suspect with illegal activity that is older [than] a few days is somewhat suspect . . . ."  (*Id*. at p. 6).  In this case, by the time WSP had received the information from Yahoo! about the log-in IP addresses (early August 2007), a month to a month and a half had already passed since the log-ins had occurred on June 18 and 19, and July 3, 2007.

Plaintiffs contend it is significant "the Chisms don't even have a Yahoo! account but instead pay to subscribe to AOL [America Online], a fact Defendant Detective Gardner knew from reviewing the Chisms' bank records."  Detective Gardner certainly did know the Chisms subscribed to AOL and indeed, stated that fact in her search warrant affidavit ("On the transaction history from Bank of America is also a reocurring (sic) purchase to AOL Service").  (Ex. M to Ct. Rec. 27 at p. 8).  The fact the Chisms subscribed to AOL did not rule out the possibility they were the ones who made purchases from the web sites in question.

**ORDER RE SUMMARY JUDGMENT MOTIONS, *INTER ALIA*- 22**

Moreover, as Detective Gardner explains in her Supplemental Declaration (Ct. Rec. 49 at p. 5), none of the IP addresses identified, whether registration or log-in, belonged to AOL.

Because the registration IP addresses could not be used to link Ms. Corn and Ms. Pleasant to uploading the child pornography, and because the log-in IP addresses could not be associated with a specific computer location, the critical information turned out be the use of the Chisms' 6097 credit card to purchase downloads from the respective web sites, roughly corresponding to when there had been log-ins to those web sites. Plaintiffs contend the card bearing the number 6907 "was one of four [cards] the Chisms had with Bank of America" and "[i]t was previously reported as lost while three of their other cards had reported histories of fraudulent activity."

Gardner contends she was not told by Bank of America that card number 6907 had been lost, but rather that it had been issued to replace a card that had been lost. Furthermore, Gardner says she was told there was no report of fraud with regard to that particular card, and that she was not aware of fraud reported on any of the Chisms' other credit cards prior to the time that she sought and obtained the search warrant. Gardner asserts the first time she learned the Chisms had potentially been the victims of identity theft was following the execution of the search and arrest warrants. Todd Chism informed the detectives that interviewed him on the day of his arrest (January 29, 2008) that he and his wife had previously reported fraud on their credit card account. Discovered in the Chisms' home during the search was an August 19, 2007 letter from Bank of America to the Chisms indicating the bank had been alerted to the possibility of fraudulent usage on the Chisms' credit card account. Gardner says in January 2009, she was informed by a Bank of America representative that there were no fraud reports by

**ORDER RE SUMMARY**
**JUDGMENT MOTIONS,** *INTER ALIA-* **23**

the Chisms during May or June 2007, but that the bank had flagged an attempted

purchase that did not actually post to the account.  After Mrs. Chism indicated the

attempted purchase was illegitimate, the 2191 number was changed to 9626 (card

number 6907 had previously been changed to 2191 because of a bank merger).

Gardner says Bank of America confirmed that in August 2007, the Chisms

challenged four other purchases that were made with card number 9626.  Gardner

asserts she was never aware of any fraud being reported with regard to card

number 6907.  According to Gardner (Supplemental Declaration, Ct. Rec. 49 at p.

3): "While Bank of America confirmed that the Chisms had reported fraud on

different account numbers (2191 and 9626), no fraud was reported on the account

associated with the transactions involved with the child pornography web sites

[6907], until the day after the search and arrest warrants were served."

Plaintiffs offer a report from WSP Detective Jeff Thoet who assisted in

executing the search warrant at the Chism residence on January 29, 2008.  In that

report, Thoet stated:

> I observed Alaska Airlines VISA account documents ( . . . 9629
> . . . and 2191) inside of the drawer file cabinet.  I observed a
> file with account number . . . 6907 and three credit cards.  I
> verified the account number on one of the cards was the same
> as used to download the child porn with the case detective
> [Gardner].  Case Detective did not want the cards collected
> for evidence. **I observed a document from Bank of America
> stating there was "possible fraudulent usage" on the account.[8]  I
> showed the document to the case detective and she requested the
> document be placed into evidence.  The case detective was aware
> of the report of the possible fraudulent activity on the account
> and I was advised this report occurred shortly after the child
> porn had been purchased.** I advised her that there was a file with
> the purchases made with the VISA account in question and I was told
> by her that she had already obtained the information and did not need
> the documents.  I was not involved in this investigation and this was
> the first that I had heard about this issue of possible fraudulent
> activity on the VISA account.

---

[8] This is the August 19, 2007 letter discussed above.

**ORDER RE SUMMARY
JUDGMENT MOTIONS, *INTER ALIA*-  24**

(Ex. A to Ct. Rec. 45 at p. 7).

In her Supplemental Declaration, (Ct. Rec. 49 at p. 2), Gardner acknowledges that she did tell Thoet she was aware of possible fraudulent activity on the Chisms' credit card account, but only because she had learned of it that very morning from interviews of the Chisms. According to Gardner, the arrest warrant for Todd Chism was served before the search warrant was executed and the interview with him was conducted before the search of the Chism home. During that interview, Chism asserted that he and his wife had reported fraud on their account. Ms. Chism was interviewed while the search of the home was being conducted and she too indicated the couple had reported fraud on their account. The Chisms filed a fraud packet with Bank of America in August 2007 contesting four charges to a company named NC Soft using card number 9626. (Ex. E to Ct. Rec. 13 and Appendix D to Ct. Rec. 83). The Yahoo! charges to card number 6907 were not contested.

Gardner says she focused her investigation on Todd Chism, instead of Nicole Chism, because Mr. Chism was "the primary" on the credit card accounts, and because in her experience, the "vast majority of child pornography offenders are male." It is true that nowhere in her search warrant affidavit did Gardner make any statement as to the vast majority of child pornography offenders being male (although in this court's experience, that has been borne out).[9]  In any event,

_____

[9] Arguably, there would have been reason to believe it was more likely Todd Chism because of the references to "Mr. Nicole Chism" and "Male" in the Yahoo! Account Management Printout tool.

**ORDER RE SUMMARY**
**JUDGMENT MOTIONS,** *INTER ALIA***-  25**

however, if the information obtained by WSP was sufficient to establish probable

cause as to Todd Chism, it was just as sufficient to establish probable cause as to

Nicole Chism since they lived in the same residence and used the same credit

cards.

### c. Images Retrievable From Computer

Plaintiffs also contend the information Detective Gardner provided in her

search warrant affidavit was stale considering the downloads from the web sites

were purchased in May and June 2007, but the search was not executed until

January 2008.  According to Plaintiffs, "the isolated six to seven month old

fraudulent transactions on the Chisms' credit card create a situation where

probable cause dwindles quickly and becomes obviously too stale to support any

inference of probable cause."

Gardner's search warrant affidavit stated that pursuant to her training and

experience, she had learned that "[p]ersons involved in sending or receiving child

pornography tend to retain it for long periods of time."  (Ex. M to Ct. Rec. 27 at p.

5).  Furthermore, like the search warrant affidavit in *Gourde*, Gardner's affidavit

noted that "computer evidence can remain stored on computers for extended

periods of time" and "[e]ven when computer evidence is deleted it may still be

recovered from computer hard drives, floppy disks, or other computer information

storage devices."  (*Id*. at p. 6).  In *Gourde*, the court concluded it was unlikely that

evidence of a crime would have been stale or missing as less than four months had

elapsed between the closing of the Lolitagurls.com web site and the execution of

the search warrant.  440 F.3d at 1071, citing *United States v. Lacy*, 119 F.3d 742,

746 (9th Cir. 1997) (good reason to believe computerized visual depictions

downloaded by defendant would be present in his apartment when the search was

**ORDER RE SUMMARY**
**JUDGMENT MOTIONS,** *INTER ALIA-* **26**

conducted ten months later).

### 2. Arrest Warrant

"Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007).  An arrest is unlawful unless there is probable cause to believe that a specific criminal statute has been or is being violated.  *Devenpeck v. Alford*, 543 U.S. 146, 152, 124 S.Ct. 588 (2004). Because probable cause is a wholly objective "reasonable officer" standard, the officer's subjective motivation is irrelevant.  *Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769 (1996).        Detective Gardner's investigation, as recounted in her search warrant affidavit, was clearly the basis for the Certification Of Probable Cause filed by the Thurston County Deputy Prosecuting Attorney, which along with the Information filed by that deputy prosecutor, persuaded the reviewing judge to find probable cause for issuing a warrant for Todd Chism's arrest.  If there was probable cause to issue a search warrant, there would also have been probable cause to issue an arrest warrant, specifically probable cause to believe that Todd Chism had committed the crimes of "Sending, bringing into state depictions of minor engaged in sexually explicit conduct (RCW 9.68A.060), and "Possession of depictions of minor engaged in sexually explicit conduct (RCW 9.68A.070)."[10]  If there was not probable cause to issue a search warrant,

---

[10]  The interviews of the Chisms on the day of the search and Mr. Chism's arrest did not necessarily eliminate the existence of probable cause for his arrest.

**ORDER RE SUMMARY JUDGMENT MOTIONS, *INTER ALIA*- 27**

1    then probable cause was also lacking to issue an arrest warrant and the question is

2    whether notwithstanding the lack of probable cause, Detective Gardner and Sgt.

3    Sager are entitled to qualified immunity from damages.

4

5        **3.  Summary**

6        This court declines to make a determination as a matter of law whether there

7    was probable cause to support the search and arrest warrants (i.e., whether there

8    was a federal constitutional violation).  Instead, the court opts to skip the first step

9    of the qualified immunity analysis.  A court is "permitted to exercise [its] sound

10   discretion in deciding which of the two prongs of the qualified immunity analysis

11   should be addressed first in light of the circumstances in the particular case at

12   hand."  *Pearson*, 129 S.Ct. at 818.

13       Based on the foregoing discussion, and with specific reference to the

14   *Gourde* case, this court concludes there was not "clearly established" federal law

15

16   _____

17   While both Mr. and Mrs. Chism indicated during their interview that they had

18   filed a fraud packet with Bank of America in August 2007, that packet did not

19   contest the charges which had been made to the Yahoo! websites in question.

20

21       The fact the charges against Mr. Chism were dropped by the prosecutor

22   reflected his belief that he could not prove his case beyond a reasonable doubt, but

23   does not necessarily mean he believed there was not probable cause to support

24   issuance of search and arrest warrants.

25

26

27   **ORDER RE SUMMARY**
28   **JUDGMENT MOTIONS,** *INTER ALIA***-  28**

which rendered unreasonable the belief of Defendants Gardner and Sager that they had probable cause to seek a search warrant for the Chism residence, and a warrant for the arrest of Mr. Chism. Because of *Gourde*, and considering the totality of the information available to them, it would have been reasonable for them to believe there was a "fair probability" child pornography would be found on computers to which the Chisms has access. Gardner's affidavit was not a "bare bones" affidavit. It established at least a colorable argument for probable cause, in that "thoughtful and competent judges" might disagree about the existence of probable cause. *United States v. Luong*, 470 F.3d 898, 902-03 (9th Cir. 2006). The details in Gardner's affidavit do not constitute the kind of "foundationless expert testimony" or "boilerplate recitations" found insufficient in *United States v. Weber*, 923 F.2d at 1345-46. Moreover, with regard to the arrest warrant, a presumably independent entity, a deputy prosecuting attorney, agreed there was

///
///
///
///
///
///
///
///
///
///
///
///
///

**ORDER RE SUMMARY JUDGMENT MOTIONS, *INTER ALIA*-  29**

probable cause to charge Mr. Chism with a crime.[11]

Where a "genuine dispute as to 'the facts and circumstances within an officer's knowledge' or 'what the officer and claimant did or failed to do'" is raised, summary judgment should not be granted. *Peng v. Penghu*, 335 F.3d 970, 979-80 (9th Cir. 2003). There is no genuine issue of material fact to preclude granting qualified immunity to Gardner and Sager. There is no evidence raising a genuine dispute as to the facts and circumstances within Gardner's knowledge at

_____

[11]In the Ninth Circuit, there is a presumption that a prosecutor exercises independent judgment in determining whether there is probable cause on which to file criminal charges. *Smiddy v. Varney ("Smiddy I")*, 665 F.2d 261, 266 (9th Cir. 1981); *Borunda v. Richmond*, 885 F.2d 1384, 1390 (9th Cir. 1988). Filing of a criminal complaint immunizes investigating officers from damages suffered thereafter because it is presumed the prosecutor filing the complaint exercised independent judgment in determining that probable cause existed at that time. The presumption may be rebutted by a showing that the prosecutor was pressured or caused by the investigating officers to act contrary to her independent judgment. It may also be rebutted where there is evidence that the investigating officers knowingly presented false information to the prosecutor. *Smiddy I*, 665 F.2d at 266-67.

**ORDER RE SUMMARY**
**JUDGMENT MOTIONS, *INTER ALIA*- 30**

the time she sought the warrant, or a genuine dispute as to what Gardner did or failed to do prior to seeking the warrant. It is undisputed that prior to seeking the warrant, she phoned Bank of America, was told that the Chisms had been given the 6907 card to replace another card which had been lost in 2006, and that no fraud had been reported with regard to that particular card or to their account in general.[12] Furthermore, the Chisms never specifically reported fraud with regard to purchases made on the 6907 card and instead, in August 2007, challenged certain purchases on the 9626 card. Plaintiffs' argument is not with what Gardner actually knew, but that she should have conducted a more in-depth investigation to ascertain whether there was any credit card fraud on the Plaintiffs' account (i.e., requested more credit card statements than the four she received). As the Ninth Circuit observed in *Gourde*, the benchmark is not what "could have [been] done." *Id*. at 1073 n. 5. An affidavit may support probable cause even if the government fails to obtain potentially dispositive information. *Id*., citing *United States v. Miller*, 753 F.2d 1475, 1481 (9th Cir. 1985) ( holding that an affidavit supported probable cause even though "[i]ndependent verification could have been easily accomplished" and "the officers failed to take these simple steps"). Although this court declines to rule whether there was in fact probable cause to support the warrants in this case, there was enough information in Gardner's affidavit to

---

[12] There is no affidavit from someone from Bank of America, or a document from Bank of America, indicating that card number 6907 had ever been reported lost. As such, there is no evidence to contradict Gardner's statement as to what she was told by Bank of America prior to preparation of her search warrant and execution of the search.

**ORDER RE SUMMARY JUDGMENT MOTIONS,** *INTER ALIA*- **31**

render reasonable, her belief that there was probable cause.[13]  Put another way,
there was no "clearly established" federal law at the time Gardner sought and
obtained the search and arrest warrants that would have put her on reasonable
notice that she lacked probable cause to seek those warrants.

## IV.  CONCLUSION

Should a more thorough investigation have been conducted before the
warrants were sought?  Perhaps.  Were the Defendants negligent in not conducting
a more thorough investigation?  Perhaps, although it must be noted that mere
negligence does not give rise to an action under Section 1983.  *Davidson v.*

---

[13] Neither "clearly established" federal law, or WSP's own protocols,
required Gardner to "de-conflict" with the FBI prior to presenting her affidavit in
support of the search warrant.  The National Center For Missing and Exploited
Children (NCMEC), from which the CyberTipline Reports were received, serves
as a national clearinghouse that gathers information for law enforcement use.  Law
enforcement agencies, such as the FBI, report ongoing investigations to the
NCMEC.  (Gardner Depo., Appendix A to Ct. Rec. 84 at p. 19; Sager Depo., Ex. B
to Ct. Rec. 72 at pp. 96-97).  The information that was obtained from the FBI
following execution of the warrants was developed because of a personal contact
between one of the WSP detectives and the FBI, not because of a formal "de-
conflict" process.  (Gardner Supp. Dec., Ct. Rec. 49 at p. 6).

**ORDER RE SUMMARY
JUDGMENT MOTIONS, *INTER ALIA*- 32**

1  *Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986).

2       To have one's home searched for evidence of child pornography and to be

3  accused of such a repulsive crime is undoubtedly traumatic and humiliating.

4  Ultimately, however, this court concludes that if a mistake was committed

5  (mistake in the sense that there was no probable cause)[14], it was a reasonable one

6  under federal law.  Assuming, without deciding, there was a constitutional

7  violation, Defendants Gardner and Sager are entitled to qualified immunity

8  because the parameters of the particular constitutional right at issue (Fourth

9  Amendment in the context of an Internet child pornography investigation) were

10 not "clearly established" at the time of their alleged misconduct, and therefore,

11 they reasonably believed they had probable cause to seek and obtain the warrants

12 at issue.  Their actions were not "plainly incompetent" and they did not

13 "knowingly" violate the law.  *Malley*, 475 U.S. at 341.  There is no genuine issue

14 of material fact precluding summary judgment on the basis of qualified immunity.

15      Defendant Gardner's and Sager's Motion For Summary Judgment (Ct. Rec.

16 32) is **GRANTED** and they are awarded judgment as a matter of law on the

17 federal constitutional violations asserted against them.  Plaintiffs' Motion For

18 Summary Judgment (Ct. Rec. 11) is **DENIED**.

19      The court declines to exercise supplemental jurisdiction over Plaintiffs'

20 remaining state law claims, 28 U.S.C. Section 1367(c)(3), and those claims are

21 hereby **REMANDED** to the Spokane County Superior Court from which this

22

23      [14]  Even when probable cause exists, that obviously does not mean evidence

24

25 of a crime will be found in a particular location, or that a person has committed the

26 crime of which he has been accused.

27 **ORDER RE SUMMARY**
28 **JUDGMENT MOTIONS,** *INTER ALIA*- **33**

action originated.  The state court will make its own assessment regarding the existence of probable cause and immunity under state law.

Defendants' Motion To Strike The Reports Of Marcus Lawson (Ct. Rec. 52) is **DISMISSED** as moot.  The Spokane County Superior Court will make its own determination as to what portions of Mr. Lawson's reports  it will consider prior to trial and which, if any, of his opinions it will allow a jury to hear.

**IT IS SO ORDERED**.  The District Executive is directed to enter judgment accordingly and forward copies of the judgment and this order to counsel.  **A certified copy of this order shall also be forwarded to the Spokane County Superior Court Clerk since it also serves as an Order of Remand.**

**DATED** this ____8th____ of January, 2010.


*s/Lonny R. Suko*
_____
LONNY R. SUKO
Chief United States District Judge

**ORDER RE SUMMARY JUDGMENT MOTIONS,** *INTER ALIA-* **34**